E-FILED
Monday, 28 March, 2022  12:15:24 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **JANICE COLLINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cv-02136** |
| | ) | |
| **THE BOARD OF TRUSTEES OF** | ) | |
| **THE UNIVERSITY OF ILLINOIS,** | ) | |
| **an Illinois public entity, and** | ) | |
| **KENNETH ERDEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss
(d/e 10) filed by Defendants Board of Trustees of the University of
Illinois ("UIUC") and Kenneth Erdey ("Erdey"). For the reasons
stated below, Defendants' Motion is GRANTED IN PART and
DENIED IN PART. Counts I and II of Plaintiff's Complaint (d/e 1)
are DISMISSED WITHOUT PREJUDICE because they are
duplicative of Count III. Additionally, Counts VII and VIII are
DISMISSED WITHOUT PREJUDICE for failure to state a claim upon
which relief can be granted.

# I. BACKGROUND

The following facts are drawn from the well-pleaded allegations in Plaintiff's Complaint, which are accepted as true at the motion to dismiss stage.

In 2012, Plaintiff Janice Collins was hired by UIUC as a tenure-track Assistant Professor in the Department of Journalism of the College of Media.  Plaintiff was the first Black woman ever hired to a tenure-track position in the Department of Journalism. Beginning in 2013, Erdey, a technical coordinator and instructor responsible for maintaining the broadcast equipment and assisting with technical issues in UIUC's Richmond Studio, repeatedly interrupted Plaintiff's class lectures.  Erdey is Caucasian and male. Plaintiff asserts that Erdey tampered with and unplugged equipment before Plaintiff's classes, "called Plaintiff stupid, dumb, intimidating, angry, and loud, as well as too aggressive in her teaching style," told Plaintiff's students that "the way Plaintiff structured classwork and assignments was wrong and stupid," and "asked Plaintiff why she was always so angry and aggressive." D/  1, ¶¶ 26–28, 35.

In March 2013, Plaintiff informed a UIUC administrator that Erdey had been harassing Plaintiff.  The administrator "attempted to connect Plaintiff to potential mentors to assist her in coping with the harassment and discrimination and building a tenure dossier," but took no other action at that time.  Id., ¶ 33.  Later in 2013, the head of UIUC's Journalism Department transferred Plaintiff to another building where she was "reassigned to teaching multimedia classes" instead of the broadcast journalism classes that she had been recruited to teach.  Id., ¶¶ 36–37.  Erdey was permitted to continue teaching broadcast journalism.  Plaintiff alleges that Erdey continued to attend Plaintiff's classes and criticize Plaintiff and her teaching and also sent a number of text messages which Plaintiff describes as "racially charged, vulgar, disturbing, and inappropriate."  Id., ¶ 40.  Plaintiff also alleges that Erdey insinuated to colleagues that Plaintiff was unqualified for her position and that Plaintiff had harassed Erdey.

In 2015, Plaintiff moved back into the broadcast journalism building to teach, at which point she alleges that Erdey's harassment of her "intensified."  Id., ¶ 46.  Defendant repeatedly

complained about Erdey's behavior to a UIUC administrator who "attempted to help Plaintiff" and told Erdey to stay out of Plaintiff's classroom unless invited but did not discipline or reprimand Erdey. Id., ¶ 51.  Erdey's behavior frustrated Plaintiff and caused her stress, which led to unspecified "physical, mental, and emotional symptoms." Id., ¶ 61.

Plaintiff took a visiting faculty position at the University of Kansas for the spring of 2018 and explained to UIUC administrators that she was doing so because of Erdey's behavior towards her.  When Plaintiff returned from Kansas in 2018, UIUC administrators requested that Plaintiff meet with Erdey.  Plaintiff requested that the administrators attend the meeting because Plaintiff was uncomfortable with the idea of meeting Erdey alone. The head of the Department of Journalism attended the beginning of the meeting but left partway through.  No other UIUC administrators were present.

After Plaintiff's meeting with Erdey, UIUC administrators instructed Plaintiff and Erdey to jointly author a report outlining a strategy for resolving their differences.  Plaintiff "reluctantly" co-

authored the report because she "did not want to be insubordinate or anger persons who would be involved in her tenure decisions." Id., ¶ 70.  Following this meeting, Plaintiff alleges that Erdey continued to harass Plaintiff, and Plaintiff reported his behavior to UIUC's administration.  UIUC administrators required Plaintiff to consent to a mediation session with Erdey, which Plaintiff refused to do.

Newly hired tenure-track professors at UIUC are placed on a probationary period of six years before they are granted or denied tenure.  Tenure applications are reviewed by Promotion and Tenure ("P&T") Committees, which also provide guidance and mentoring to tenure-track faculty members.  A P&T Committee reviews a candidate's progress towards tenure after three years, and, after six years, the P&T Committee reviews a candidate's tenure application and makes a recommendation to grant or deny tenure.  At Plaintiff's third-year review, in March 2016, her P&T Committee concluded that she was making appropriate progress towards tenure, but they noted concerns that Plaintiff had not published enough research in peer-reviewed scholarly journals.

On October 17, 2018, Plaintiff received notice that her P&T Committee had recommended that she be denied tenure and that she be issued a one-year "terminal contract." Id., ¶ 157. Plaintiff appealed this decision and requested reconsideration of the denial of her tenure application, but her appeal was denied. On December 6, 2018,[1] Provost Andreas Cangellaris informed Plaintiff that he was affirming the denial of her tenure application and that she would receive a one-year "terminal contract" for the 2019–2020 school year. Id., ¶ 168. Plaintiff received her terminal contract on August 19, 2019.

During her terminal year, Plaintiff applied for a number of Associate Professor positions and received a number of interviews but no offers. Plaintiff began to notice that colleagues and staff were ignoring her and was told by a friend that UIUC administrators had instructed Plaintiff's colleagues "not to speak with Assistant Professors in the College of Media who had been

---

[1] Plaintiff's Complaint gives two inconsistent dates—December 6 and December 8, 2018—for when Plaintiff received notice from Cangellaris of the denial of her tenure and the decision to issue her a terminal contract. See d/e 1, ¶¶ 78, 90. Since December 6 is the date that appears more frequently in the Complaint, the documents submitted in support of the Complaint, and Plaintiff's Response to Defendants' Motion to Dismiss, the Court will treat December 6 as the correct date.

denied tenure." Id., ¶ 177.  At the time, Plaintiff was the only professor to whom that description applied.  Plaintiff also learned that "Erdey had made numerous negative and racial remarks about Plaintiff" to members of the P&T Committee.  Id., ¶ 173.

In July 2019, Plaintiff met with an investigator at the Equal Employment Opportunity Commission ("EEOC") and submitted an intake questionnaire and a written summary of her complaints against UIUC and Erdey.  Plaintiff has attached the notes made of that meeting by the EEOC investigator, a Mr. Shuwn[2] Hayes ("Hayes").  Hayes advised Plaintiff that "until her denial for Tenure is official, she has not suffered harm in this regard but she still maintains the right to file a charge.  [Plaintiff[ declined to file a charge today but will return once her tenure is officially denied." Id., exh. C.  Plaintiff understood Hayes to be saying that the 300-day limitations period for timely filing an official charge would not begin to run until after Plaintiff was officially terminated from her employment at UIUC.  Plaintiff claims that, "[b]ut for the incorrect

_____

[2] The Complaint contains two inconsistent spellings for Mr. Hayes's first name, "Shuwn" and "Shwun."  See d/e 1, ¶ 182; d/e 1, exh. B, 1; d/e 1, exh. C.

advice of Mr. Hayes," she would have filed an EEOC charge within 300 days of the denial of her application for tenure.

On June 1, 2020, Plaintiff's employment contract was terminated by UIUC.  Also in June 2020, Plaintiff was denied access to life insurance policy funds related to her employment at UIUC and was informed that she could not access said funds because she had been "terminated."  Plaintiff alleges in her Complaint that this denial of benefits was improper.

Plaintiff filed a formal charge with the EEOC on December 21, 2020, alleging that UIUC had discriminated against her in its decision on her tenure application, retaliated against her by giving negative references to prospective employers, failed to prevent her from being harassed by Erdey, and improperly denied her unemployment benefits.  On March 16, 2021, Plaintiff received a notice from the EEOC of her right to sue.

Plaintiff filed an eight-count Complaint in this matter on June 14, 2021.  Counts I and II allege violations of Title VII of the Civil Rights Act by UIUC based on racial and gender-based discrimination, respectively.  Plaintiff alleges that UIUC

discriminated against her by failing to take corrective action in
response to Erdey's racialized and gender-based harassment of
Plaintiff.  Count III alleges that the same failure to take corrective
action constituted a failure to prevent a hostile work environment,
in violation of Title VII.  Count IV alleges that UIUC's denial of
Plaintiff's tenure application violated Title VII because the denial of
tenure was the result of racial and gender-based discrimination.
Count V alleges that UIUC retaliated against Plaintiff for reporting
Erdey's harassment by giving negative references to Plaintiff's
prospective employers and ordering UIUC employees to shun
Plaintiff.  Count VI alleges that UIUC's discriminatory failure to
promote Plaintiff violated the Illinois Civil Rights Act ("ICRA").
Counts VII and VIII allege tort claims for intentional and negligent
infliction of emotional distress against Erdey.

On August 24, 2021, Defendants filed a Motion to Dismiss
(d/e 10) under Fed. R. Civ. P. 12(b)(6).  Defendants argue that: (1)
Counts I and II of Plaintiff's Complaint should be dismissed as
duplicative of Count III; (2) Plaintiff's Title VII claims are all
time-barred because Plaintiff waited until more than 300 days after

she was denied tenure to formally file a charge with the EEOC; (2) Plaintiff's claims should all be dismissed because Plaintiff has not alleged sufficient facts to render her claims plausible; and (3) Plaintiff's ICRA claim is untimely because Plaintiff filed suit more than two years after her tenure application was denied.

Plaintiff filed a Response to Defendants' Motion on September 20, 2021. Plaintiff concedes that Counts I and II should be dismissed as duplicative of Count III. However, Plaintiff asserts that her Title VII claims are not untimely because she submitted an intake questionnaire to the EEOC in July 2019, fewer than 300 days after she was notified of UIUC's decision to reject her tenure application. Plaintiff argues that this intake questionnaire and the written document she submitted along with the questionnaire should be deemed a "charge" for statute of limitations purposes. Additionally, Plaintiff argues that Counts III through VIII all state plausible claims and that Count VI is not time-barred because the applicable statute of limitations did not begin to run until August 2019.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the Plaintiff fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor.  Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the Plaintiff is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

# III. ANALYSIS

## A.   Plaintiff's Title VII Claims Cannot Be Dismissed as Untimely at the Motion to Dismiss Stage.

A plaintiff who wishes to bring a Title VII claim for employment discrimination "must file charges with the EEOC within 300 days of the alleged unlawful employment practice, in deferral states like Illinois." Bass v. Joliet Pub. Sch. Dist. No. 86, 746 F.3d 835, 839 (7th Cir. 2014); see 42 U.S.C. § 2000e-5(e)(1).  Any claim based on a discrete act that took place more than 300 days before the filing of a charge with the EEOC is time-barred.  Id.  Defendants argue that Plaintiff's Title VII claims are time-barred because Plaintiff did not file a formal charge of discrimination with the EEOC until December 21, 2020, more than 300 days after December 6, 2018, when UIUC denied Plaintiff's tenure application.

Defendants rely principally on Delaware State College v. Ricks, 449 U.S. 250 (1980), a case in which the Supreme Court held that the limitations period for filing an employment discrimination charge with the EEOC began to run when the plaintiff was notified that his tenure application had been denied.  Id. at 261–62. However, even if Defendants are correct that the limitations periods

for all of Plaintiff's Title VII claims began to run when her tenure was denied, the claims are not time-barred if Plaintiff filed a charge with the EEOC within 300 days of December 6, 2018.

Under <u>Fed. Exp. Corp. v. Holowecki</u>, 552 U.S. 389 (2008), a filing with the EEOC can be a "charge" if it contains the information required by the relevant regulations and if it can be reasonably construed as "a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." <u>Id.</u> at 393 (discussing the meaning of "charge" in the Age Discrimination in Employment Act of 1967); <u>see</u> <u>McClendon v. Illinois Dep't of Transportation</u>, 181 F. Supp. 3d 578, 589 (N.D. Ill. 2015) (finding that "<u>Holowecki</u> compels the conclusion" that plaintiff's submission of complaint and intake questionnaire to the EEOC satisfied Title VII's charge filing requirement).

Further, a limitations period is an affirmative defense, <u>see</u> <u>Laouini v. CLM Freight Lines, Inc.</u>, 586 F.3d 473, 475 (7th Cir. 2009), and a plaintiff is not required to anticipate and respond to affirmative defenses in a complaint.  <u>See</u> <u>Hyson USA, Inc. v. Hyson</u>

2U, Ltd., 821 F.3d 935, 939 (7th Cir. 2016).  It is, therefore,

"'irregular' to dismiss a claim as untimely under Rule 12(b)(6)."

Hollander v. Brown, 457 F.3d 688, 691 (7th Cir. 2006) (quoting

United States v. N. Trust Co., 372 F.3d 886, 888 (7th Cir.2004)).

Such a motion can succeed only if "the allegations of the complaint

itself set forth everything necessary to satisfy the affirmative

defense."  United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005).

Here, the allegations in Plaintiff's Complaint do not

conclusively show that Plaintiff's claims are time-barred.  Plaintiff

alleges that she submitted two documents to the EEOC in July

2019, namely an intake questionnaire and a five-page summary of

Plaintiff's complaints against UIUC.  Plaintiff was under no

obligation to attach the intake questionnaire to her Complaint, and

she has not done so.  See Hurst v. Hantke, 634 F.3d 409, 411 (7th

Cir.2011) (noting that the Federal Rules of Civil Procedure do

not "require a plaintiff to attach evidence to his complaint").  Courts

have at times deemed EEOC intake questionnaires to be "charges,"

see McClendon, 181 F. Supp. 3d at 589, and it is plausible that

Plaintiff's questionnaire could qualify as a charge.  Moreover, the

five-page summary note that Plaintiff submitted along with her
questionnaire contains a number of statements that could plausibly
be construed as requests for agency action, such as the assertion
that Plaintiff is "considering suing for every dime that not getting
tenure took from her" and "wants something to be done about it
even if it is to sue."  D/e 1, exh. A, p. 3.

Clearly, July 2019 is within 300 days of December 6, 2018.
Therefore, any claims "like or reasonably related to" the allegations
in a charge filed in July 2019 would not be time-barred.  Geldon v.
S. Milwaukee Sch. Dist., 414 F.3d 817, 819 (7th Cir. 2005).
Because the documents Plaintiff submitted to the EEOC may satisfy
Title VII's charge filing requirement, Defendants' motion to dismiss
Plaintiff's Title VII claims as untimely is denied.

**B.    Plaintiff's Complaint States Claims for Failure to Promote,
Failure to Prevent a Hostile Work Environment, and
Retaliation.**

Title VII "forbids employers from requiring people to work in a
discriminatorily hostile or abusive environment."  Boss v. Castro,
816 F.3d 910, 920 (7th Cir. 2016).  Defendants argue that Plaintiff
has "failed to allege a prima facie case of a hostile work

environment." D/e 10, p. 9. But a complaint need not establish a prima facie case of discrimination in order to survive a motion to dismiss. See Swierkiewicz v. Sorema N.A., 524 U.S. 506, 510 (2002) ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). Moreover, the pleading requirements for Title VII employment discrimination claims are not demanding. To survive a motion to dismiss, a complaint alleging race discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of his race." Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 633 (7th Cir. 2013). A complaint must also include "enough details about the subject-matter of the case to present a story that holds together," Swanson v. Citibank, N.A., 614 F.3d 400, 404–05 (7th Cir.2010), and Plaintiff's 41-page complaint provides a wealth of detailed allegations relevant to her discrimination claims.

With respect to Plaintiff's hostile work environment claim, Defendants argue that the Complaint itself establishes that UIUC

took steps to resolve the issues between Plaintiff and Erdey. But avoiding liability for harassment that violates Title VII requires an employer to show that it took "reasonable" or "appropriate" steps to address the issue. Here, Plaintiff alleges that UIUC took a number of unreasonable and inappropriate actions, such as forcing Plaintiff to teach classes outside of her specialty in order to avoid contact with her harasser and requiring Plaintiff to meet with her harasser alone, over her strenuous objections. The Court will not assume that the measures taken by UIUC were reasonable and appropriate at the motion to dismiss stage, where Plaintiff is entitled to every reasonable inference arising from the facts alleged in her complaint.

Count IV, in which Plaintiff alleges that UIUC discriminated against her on the basis of her race and sex by denying her tenure, also survives Defendants' Motion to Dismiss for similar reasons. Defendants invite the Court to "closely scrutinize" Plaintiff's discrimination claim and ask "whether the evidence, considered as a whole, would permit a reasonable factfinder to conclude" that Plaintiff was denied tenure because of her race and/or sex. D/e 10, pp. 12–13. But courts do not weigh evidence or closely scrutinize a

Plaintiff's claims when considering a motion to dismiss under Rule
12(b)(6).  Plaintiff's Complaint contains a number of allegations
which, when taken as true, give rise to the reasonable inference
that Plaintiff was denied tenure because of her race and sex.
Plaintiff claims, for example, that the head of her department and
the dean of her college both explicitly admitted to Plaintiff "that she
had been treated differently throughout her time at UIUC because
she was an African-American female."  D/e 1, ¶ 79.  Plaintiff also
claims that her P&T Committee "discriminated against Plaintiff by
providing inaccurate direction regarding the tenure process and
failing to participate in objective evaluation of Plaintiff's merit" and
that "[t]he P&T Committee's actions were discriminatory and
designed to ensure that the Department of Journalism would not
include a tenured African-American female professor."  Id.,
¶¶ 133–34.

Count V, Plaintiff's retaliation claim, survives the motion to
dismiss as well.  Title VII prohibits an employer from retaliating
against an employee for opposing an unlawful employment practice.
42 U.S.C. § 2000e–3(a).  Here, Plaintiff alleges that she repeatedly

reported Erdey's racial harassment of her to UIUC's administration and that UIUC administrators responded to these reports by: (1) giving negative references to future employers so that Plaintiff would not receive another job; and (2) ordering UIUC faculty and staff not to speak with Assistant Professors who had been denied tenure in the College of Media, when Plaintiff was the only person at UIUC who fit that description.  See id., ¶¶ 231–32; see also Haugerud v. Amery Sch. Dist., 259 F.3d 678, 692 (7th Cir. 2001) ("An adverse employment action might occur when an employer orders its employees to shun the plaintiff, provided that this activity causes material harm to the plaintiff.").  Taken as true, these allegations state a claim for retaliation.

## C.    Plaintiff's ICRA Claim Cannot Be Dismissed as Untimely at the Motion to Dismiss Stage.

Count VI alleges that UIUC's denial of Plaintiff's tenure application violated 740 ILCS 23/5, the Illinois Civil Rights Act (ICRA).  Defendants have moved to dismiss Plaintiff's ICRA claim as untimely.  Unlike Title VII, the ICRA does not require a party to file an administrative charge before bringing a lawsuit.  The ICRA does, however, require that any lawsuit under the ICRA must be filed

within two years of the alleged violation.  See 740 ILCS 23/5(b).

Here, Plaintiff was notified that her application for tenure had been

denied on December 6, 2018.  Plaintiff's Complaint was filed more

than two years later on June 14, 2021.  Defendants argue that this

lapse of time renders Plaintiff's ICRA claim untimely.

Under Illinois law, limitations periods begin to run when the

party seeking relief "knows or reasonably should know of his injury

and also knows or reasonably should know that it was wrongfully

caused."  Parks v. Kownacki, 737 N.E.2d 287, 294 (Ill. 2000)

(quoting Knox College v. Celotex Corp., 430 N.E.2d 976 (Ill. 1981)).

Plaintiff asserts that she did not know that her tenure had been

denied because of her race and sex until August 2019, when UIUC

administrators admitted that she had been treated differently

because of her race and sex.  See d/e 15, p. 30.

As discussed supra in Section III.A, a statute of limitations bar

is an affirmative defense, so dismissal under Rule 12(b)(6) is

appropriate only if "the allegations of the complaint itself set forth

everything necessary to satisfy the affirmative defense."  See Lewis,

411 F.3d at 842.  Additionally, the question of exactly when a

plaintiff knew or should have known of her injury is "a fact-intensive inquiry."  Hileman v. Maze, 367 F.3d 694, 697 (7th Cir. 2004).  Here, the allegations in Plaintiff's Complaint do not conclusively establish the date on which Plaintiff should have known that the decision to deny her tenure application was discriminatory.  Defendants' motion to dismiss Count VI as untimely is, therefore, denied.

**D.   Plaintiff Fails to State Claims for Intentional and Negligent Infliction of Emotional Distress.**

Counts VII and VIII, for Intentional and Negligent Infliction of Emotional Distress, respectively, both name Erdey as the sole Defendant.  This is, evidently, the result of a drafting error.  The harm alleged in Count VII consists of "directing Plaintiff to repeatedly interact with Defendant Erdey," "failing to investigate or mitigate the harassment and discrimination," and "retaliating against [Plaintiff] for reporting the harassment and discrimination." D/e 1, ¶ 237.  Count VIII alleges that "Defendant Board of Trustees" took various actions that caused Plaintiff "severe physical and emotional damage due to Defendant Board of Trustees' negligent conduct," but makes no mention of any tortious act by Erdey.

Plaintiff may have intended to name UIUC instead of or in addition to Erdey as a Defendant to Counts VII and VIII, or Plaintiff may have intended to allege that Erdey himself inflicted emotional distress on her.  Rather than speculating, the Court will dismiss Counts VII and VIII without prejudice and give Plaintiff the opportunity to amend her Complaint to adequately allege claims for intentional and/or negligent infliction of emotional distress.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (d/e 10) is GRANTED IN PART and DENIED IN PART.  Counts I, II, VII, and VIII of Plaintiff's Complaint are DISMISSED WITHOUT PREJUDICE.  As Defendant Kenneth Erdey is not a party to any remaining Count, the Clerk is DIRECTED to terminate Defendant Erdey as a party.  Plaintiff may file an amended complaint on or before April 12, 2022.  Defendant shall file an answer to the original Complaint or an answer or other response to any amended complaint on or before April 26, 2022.

**ENTERED:  March 28, 2022**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**